# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF TENNESSEE
# AT KNOXVILLE

| | |
|---|---|
| GENNY JONES, ) | |
| ) | Case No. 3:23-cv-415 |
| *Plaintiff*, ) | |
| ) | Judge Atchley |
| v. ) | |
| ) | Magistrate Judge Poplin |
| LOUDON COUNTY, TENNESSEE and ) | |
| OFFICER DOES 1–5, ) | |
| ) | |
| *Defendants*. ) | |

## MEMORANDUM & ORDER

Plaintiff, proceeding through counsel, seeks relief under 42 U.S.C. § 1983 based on events that led to her giving birth in the back of an ambulance on November 20, 2022, the same day she was processed into the Loudon County Jail [Doc. 55]. Now before the Court is Defendant Loudon County's Motion for Summary Judgment [Doc. 36], in support of which it filed exhibits [Docs. 36-1–27, 40–44] and a memorandum [Doc. 38]. Plaintiff filed a response in opposition to this motion [Doc. 48], in support of which she filed exhibits [Docs. 49-1–25]. Defendant Loudon County filed a reply [Doc. 52]. Also, after Defendant Loudon County filed its Motion for Summary Judgment, Plaintiff filed an amended complaint [Doc. 55] and a Motion in Limine [Doc. 50].

For the reasons set forth below, the Court finds that no genuine issue of material fact remains herein, and Defendant Loudon County is entitled to summary judgment. Accordingly, this Defendant's Motion for Summary Judgment [Doc. 36] will be **GRANTED**, Plaintiff's Motion in Limine [Doc. 50] will be **DENIED as moot**, and this action will be **DISMISSED**.

## I.  OFFICER DOES

As the Court noted in its previous order, while Plaintiff attempted to amend her complaint to name the Doe Defendants [Doc. 23], she only did so after the applicable statute of limitations had run [Doc. 54 at 3–4]. But Plaintiff's failure to timely amend her complaint to name the Doe Defendants is fatal to her claims against these Defendants. *Smith v. City of Akron*, 476 F. App'x 67, 69 (6th Cir. 2012) (holding that adding new, previously unknown Defendants in the place of Doe defendants is not equivalent to substituting parties, but rather amounts to addition of parties, and that Rule 15(c) offers no remedy to a plaintiff seeking to do so after the statute of limitations has passed); *Cox v. Treadway*, 75 F.3d 230, 240 (6th Cir. 1996) (finding that "Sixth Circuit precedent clearly holds that new parties may not be added after the statute of limitations has run, and that such amendments do not satisfy the 'mistaken identity' requirement of Rule 15(c)[]"). Accordingly, the Court *sua sponte* dismisses Plaintiff's claims against the Doe Defendants.

## II.  AMENDED COMPLAINT

After Defendant Loudon County filed its summary judgment motion, Plaintiff filed an amended complaint [Doc. 54 at 1–4, 6; Doc. 55]. While neither party has raised the issue of whether the amended complaint affects the summary judgment motion, the Court already noted that the amended complaint only adds facts that have little if any relevance to the municipal liability claims [Doc. 54 at 1–4], which are the only claims remaining herein. As such, the Court finds that it may still rule on the motion for summary judgment. *TERA II, LLC v. Rice Drilling D, LLC*, 679 F. Supp. 3d 620, 636 (S.D. Ohio 2023) (noting that "subsequent filings of amended complaints do not necessarily moot prior motions for summary judgment where the claims remained substantively the same . . . .") (collecting cases) (citations omitted).

### III. SUMMARY JUDGMENT

#### A. Standard

Summary judgment is proper when the pleadings and evidence, viewed in a light most favorable to the nonmoving party, illustrate that no genuine issue of material fact exists, and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a), (c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). A fact is deemed "material" if resolving that fact in favor of one party "might affect the outcome of the suit under governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). To establish an entitlement to summary judgment, the moving party must demonstrate that the nonmoving party cannot establish an essential element of their case for which they bear the ultimate burden of proof at trial. *Celotex*, 477 U.S. at 322; *Moore v. Philip Morris Cos., Inc.*, 8 F.3d 335, 339 (6th Cir. 1993).

Once the motion is properly supported with competent evidence, the nonmovant must show that summary judgment is inappropriate by setting forth specific facts showing there is a genuine issue for trial. *Celotex*, 477 U.S. at 323; *Anderson*, 477 U.S. at 249. The plaintiff cannot meet this burden with "some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986), "conclusory allegations," *Lujan v. Nat'l Wildlife Fed'n.*, 497 U.S. 871, 888 (1990), or by a mere "scintilla" of evidence, *Anderson*, 477 U.S. at 252. If the "evidence is such that a reasonable jury could return a verdict for the nonmoving party," then there is a genuine dispute as to a material fact. *Anderson*, 477 U.S. at 248. If no proof is presented, however, the Court does not presume that the nonmovant "could or would prove the necessary facts." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (citing *Lujan*, 497 U.S. at 889).

### B. Background

The majority of Plaintiff's amended complaint and the parties' summary judgment filings focus on the Loudon County Jail employees' acts and omissions during Plaintiff's relevant confinement that ultimately led to Plaintiff giving birth to a baby in the back of an ambulance on the same day she was admitted into the Loudon County Jail, as well as Plaintiff's own acts and omissions during her pregnancy and confinement.[1] However, as set forth above, the only claims remaining herein are Plaintiff's municipal liability claims against Defendant Loudon County. And while the Court recognizes that "[t]here can be no liability under *Monell* without an underlying constitutional violation," *Chambers v. Sanders*, 63 F.4th 1092, 1101–02 (6th Cir. 2023) (quoting *Robertson v. Lucas*, 753 F.3d 606, 622 (6th Cir. 2014)), for purposes of efficiency and simplicity, the Court declines to determine whether any employee of Defendant Loudon County violated Plaintiff's constitutional rights during the relevant events of November 20, 2022. Instead, the Court will focus only on whether Defendant Loudon County may be liable for any violation of Plaintiff's constitutional rights.

In her response in opposition to Defendant Loudon County's Motion for Summary Judgment, Plaintiff specifies that she only seeks relief under § 1983 from Defendant Loudon County based on "[(1)] a failure to train allegation, both as one stemming from a single incident and from a pattern of constitutional violations including denial of post-partum care, as well as [(2)] a theory of inaction when it ignored [Plaintiff] while she was in active labor, in part due to the deputies' bias against Ms. Jones and [] the existence of a custom of tolerance or acquiescence of

---

[1] The Court recognizes that this is likely because at the time Defendant Loudon County filed its motion for summary judgment, Plaintiff's motion to amend her complaint to name the Doe Defendants [Doc. 23] was still pending. However, the Court subsequently denied Plaintiff's request to amend her complaint by naming the Doe Defendants [Doc. 54 at 1–4, 6].

4

federal rights violations"[2] [Doc. 48 at 22–23]. Accordingly, after providing a brief summary of the events underlying Plaintiff's complaint based on the evidence in the record as viewed in the light most favorable to Plaintiff, the Court will focus only on the parties' arguments and evidence underlying the municipal liability claims Plaintiff is still pursuing.

1.   **Fact Summary**

Plaintiff was taken into custody by a bondsman, and she told the bondsman she was pregnant [Doc. 36-1 at 19, 22–23, 53]. While she was in transit with the bondsman, Plaintiff started to lose her mucus plug [*Id.* at 46–47]. After she reached the Loudon County Jail, Plaintiff told an officer performing a medical screening that she was 8.5 months pregnant,[3] her pregnancy was high risk, and her baby was breech [*Id.* at 46–47; Doc. 36-6 at 9–10].

After being booked into the jail, Plaintiff was taken to a holding cell, where she began to experience pain, bleeding, and additional mucus excretion, which signified to her that she was in labor [*Id.* at 43–44]. Plaintiff claims that when she complained to jail staff about her labor pains, they told her she was lying and faking it [Doc. 49-1 p. 15]. After Plaintiff used the speaker in her cell to complain about her pain to officers three or four times [*Id.*], jail officials moved her to the booking area of the jail, where she was "cuffed to a bench" [Doc. 36-1 p. 41].

---

[2] This statement omits any allegation that Defendant Loudon County's custom or policy of failing to properly medically screen inmates upon admission to the jail resulted in a violation of Plaintiff's constitutional rights, as alleged in the amended complaint [Doc. 55 at 6, 10, 11], a claim for which Defendant Loudon County sought summary judgment in its favor [Doc. 38 at 26–27]. Accordingly, Plaintiff abandoned this claim. *Brown v. VHS of Michigan, Inc.*, 545 F. App'x 368, 372 (6th Cir. 2013) ("This Court's jurisprudence on abandonment of claims is clear: a plaintiff is deemed to have abandoned a claim when a plaintiff fails to address it in response to a motion for summary judgment.") (collecting cases) (citations omitted). As such, the Court will not address this claim on the merits.

[3] The record demonstrates that while Plaintiff initially testified at her deposition that she told officers she was 7.5 months pregnant [*Id.* at 54], she ultimately acknowledged that she may have said she was 8.5 months pregnant [*Id.* at 82–83]. Also, the officer who conducted Plaintiff's medical screening testified at his deposition that Plaintiff told him she was 8.5 months pregnant [Doc. 36-6 at 9], and Plaintiff appears to accept this version of events in her response in opposition to Defendant Loudon County's Motion for Summary Judgment [Doc. 48 at 2].

5

Plaintiff subsequently told officers she "had to poop," and a female officer followed Plaintiff into the restroom and saw the baby's head beginning to come out [*Id.* at 42–43]. The officers then called an ambulance, and Plaintiff delivered her baby as she was being placed into the ambulance to be taken to the hospital [*Id.* at 43, 55].

Upon her subsequent arrival at the hospital, Plaintiff's baby had an undetectable temperature, and the baby was treated at a children's hospital for various health issues, including but not limited to "prematurity," "respiratory distress," and other respiratory symptoms, as well as "neonatal withdrawal symptoms from maternal use of drugs" [Doc. 42 at 2–3, 8]. According to Plaintiff, this baby has hearing loss due to her tubes not developing properly but otherwise seems to be developing normally [*Id.* at 31–32, 49].

Notably, in her deposition, Plaintiff acknowledged that she both vaped and smoked around a pack of cigarettes a day during her pregnancy, against medical advice [Doc. 36-1 at 14–17]. And while Plaintiff denied illegal drug use during her pregnancy [*Id.* at 48], medical records indicate that Plaintiff abused drugs while pregnant [*Id.* at 52].

### 2. Arguments and Evidence

In its memorandum in support of its Motion for Summary Judgment, Defendant Loudon County asserts in relevant part that Plaintiff cannot establish (1) that it failed to train or supervise employees in a manner that caused any injury to her; (2) that it had a custom of acquiescence to federal rights violations; or (3) any policy or custom of this municipality otherwise caused any violation of Plaintiff's constitutional rights [Doc. 38 at 25–30]. In support of these assertions, Defendant Loudon County notes that its employees testified at their depositions that, at all relevant times, they had received, at a minimum, the training required for them to be certified by the Tennessee Corrections Institute ("TCI"), which does not require training regarding pregnancy [*Id.*

6

at 14–15]. This Defendant's exhibits to its summary judgment motion support these assertions [Doc. 36-5 at 22; Doc. 36-6 at 8; Doc. 36-12 at 8; Doc. 36-13 at 8; Doc. 35-15 at 19–20; Doc. 36-18 at 8–9; Doc. 36-43 at 8–9]. Defendant Loudon County also avers that Plaintiff cannot provide proof of any other constitutional violations similar to the ones alleged in this case occurring at the jail prior to the incidents underlying her complaint [Doc. 38 at 28–30].

In her response, Plaintiff states that, with regard to claim for failure to train and supervise, "there was testimony that at least one other birth had occurred in jail, and indeed there were policies addressing how to shackle female inmates, but none on what to do if they went into labor," and "[t]he deputies involved testified they were unaware of any training as to what to do in a medical emergency like this" [Doc. 48 at 23–24 (citations omitted)]. Plaintiff further asserts that her "expert, David Caruso, identified related deficiencies with respect to known substantial risks for the medical needs of pregnant detainees in Loudon's training protocol, including its failure to adhere to its Medical Service Plan, Policy 11.01" [*Id.* at 24].

Plaintiff additionally argues that because Defendant Loudon County's policies "recognized the unique challenges associated with detainment of a pregnant woman[,] [this] demonstrates knowledge that additional training as to what do if a pregnant inmate went into labor would be necessary" [*Id.* at 24–25]. Plaintiff further asserts that the testimony of Defendant Loudon County Jail employees regarding their actions establishes that they recognized the challenges inherent in determining how to handle Plaintiff's situation but did not know what to do other than apply "rote procedures for transport of an inmate who was not seemingly suffering from an emergency," and that this demonstrates both bias on the part of the employees and the need for additional training [*Id.* at 25]. Plaintiff additionally argues that, due to the differing accounts of the events underlying

7

the delivery of her child in the ambulance, a reasonable jury could find that a custom or policy of Defendant Loudon County caused her injuries [*Id.* at 25–26].

As noted above, to support her argument that Defendant County may be liable under § 1983 because it failed to properly train and/or supervise its employees, Plaintiff cites a report from her expert [*Id.* at 24]. In this report, Plaintiff's expert states in relevant part that:

> Based upon my education, experience, and training, it is my opinion to a reasonable degree of professional certainty that the Loudon County Detention Center failed to create policy surrounding inmates who are pregnant that would provide directives and training to staff, including as to when to contact a medical provider and/or transport the inmate to a medical center for treatment, including emergencies. This absence of policy left all inmates who are pregnant at risk with no protective guidelines in place . . . .
>
> \*      \*      \*
>
> It is my professional opinion to a reasonable degree of professional certainty based upon my specialized training, background, and education, as well as my continued research, auditing, training, and consulting on jail and correctional practices nationwide that the Loudon County Detention Center command staff failed to a) supervise subordinate staff, b) supervise the on-going medical needs of Ms. Jones, and c) make the prudent decision based upon and in accordance with the multiple medical directives from the available medical practitioner, which caused an unnecessary and prolonged, lengthy delay in transporting Ms. Jones to Parkwest Hospital and directly resulted in her excessive, increased, and unnecessary pain and suffering. It is clear that Officer Sutton was not appropriate and properly supervised which allowed Office Sutton to disrespect and disparage Ms. Jones as she was actively experiencing a medical emergency and begging for help . . . .
>
> \*      \*      \*
>
> Based upon my education, experience, and training it is my opinion to a reasonable degree of professional certainty that the policies and procedures set forth by Sheriff Tim Guider are consistent with the National Standards and Best Practices. This policy, Medical Service Plan, 11.01, is within National Standards, however the Loudon County Detention Center staff, including supervisors, failed to follow this policy. Policies are a guide to which staff must be trained to follow as a plan. While this policy did not specifically address the needs of a pregnant inmate, it could have still been applied to address Ms. Jones' clear medical needs.
>
> \*      \*      \*

> It is my professional opinion to a reasonable degree of certainty based upon my training, background, and education, as well as my continued research, auditing, training, and consulting on jail and correctional practices nationwide that the Loudon County Detention Center failed to train staff to recognize signs and symptoms of an inmate needing medical care and/or knowledge of appropriate actions required in prenatal emergency situations.

[Doc. 49-23 at 16–17].

### C. Analysis

As set forth above, Plaintiff has now specified that the only claims she is pursuing against Defendant Loudon County are based on allegations of failure to train, inaction, and a custom or tolerance of constitutional rights violations [Doc. 48 at 22–23[4]]. "[U]nder § 1983, local governments are responsible only for 'their *own* illegal acts.'" *Connick v. Thompson*, 563 U.S. 51, 60 (2011) (quoting *Pembaur v. Cincinnati*, 475 U.S. 469, 479 (1986)). Accordingly, a plaintiff cannot recover from a municipality "for an injury inflicted solely by its employees or agents." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978). Instead, a municipality may be liable only where "execution of [its] policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury[.]" *Id.*

A plaintiff can demonstrate that a municipality is liable for her claims under § 1983 based on its custom or policy by setting forth evidence to support one of the four following theories:

(1) the existence of an illegal official policy or legislative enactment;

---

[4] While Plaintiff alleges in her amended complaint that Defendant Loudon County's custom or policy of failing to properly medically screen inmates upon admission to the jail resulted in a violation of her constitutional rights [Doc. 55 at 6, 10, 11], a claim for which Defendant Loudon County seeks summary judgment in its favor [Doc. 38 at 26–27], she does not include this as a claim she is pursuing in her response to the summary judgment motion. Accordingly, Plaintiff abandoned this claim, *Brown v. VHS of Michigan, Inc.*, 545 F. App'x 368, 372 (6th Cir. 2013) ("This Court's jurisprudence on abandonment of claims is clear: a plaintiff is deemed to have abandoned a claim when a plaintiff fails to address it in response to a motion for summary judgment.") (collecting cases) (citations omitted), and the Court will not address it on the merits.

(2) that an official with final decision making authority ratified illegal actions;
(3) the existence of a policy of inadequate training or supervision; or
(4) the existence of a custom of tolerance or acquiescence of federal rights violations.

*Burgess v. Fischer*, 735 F.3d 462, 478 (6th Cir. 2013) (citation omitted). A plaintiff also may hold a municipality liable for its "inaction" by presenting evidence of:

(1) the existence of a clear and persistent pattern of unconstitutional conduct;
(2) notice or constructive notice on the part of the [County];
(3) the [County's] tacit approval of the unconstitutional conduct, such that [its] deliberate indifference in [its] failure to act can be said to amount to an official policy of inaction; and
(4) that the [County's] custom was the "moving force" or direct causal link in the constitutional deprivation.

*Thomas v. City of Chattanooga*, 398 F.3d 426, 429 (6th Cir. 2005) (citing *Doe v. Claiborne Cnty.*, 103 F.3d 495, 508 (6th Cir. 1996)).

To be actionable under § 1983, a municipal custom or policy—whether implicit or explicit—must be "so widespread as to have the force of law[,]" as characterized by the "persistent practices of state officials." *Gregory v. Shelby Cnty.*, 220 F.3d 433, 442 (6th Cir. 2000); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 167 (1970). And municipal liability claims require a plaintiff to show "an affirmative link between [a municipality's] policy or custom and the particular constitutional violation alleged." *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 823 (1985). Moreover, the Supreme Court has cautioned that, "[w]here a court fails to adhere to rigorous requirements of culpability and causation, municipal liability collapses into *respondeat superior* liability." *Bd. of Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 415 (1997).

### a. Failure to Train

Plaintiff's first theory of *Monell* liability is that Defendant Loudon County failed to properly train its employees. A municipality may be liable for failing to train or supervise its

10

officers under § 1983 "where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." *Canton v. City of Harris*, 489 U.S. 378, 388 (1989). But "[a] municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train[,]" *Connick*, 563 U.S. at 61, because an "officer's shortcomings may have resulted from factors other than a faulty training program[,]" *City of Canton,* 489 U.S. at 390–91. Moreover, it is not sufficient for a § 1983 plaintiff to show that his specific injury could have been prevented or avoided if the municipality had more or better training. *City of Canton*, 489 U.S. at 390–91.

To establish municipal liability under a failure-to-train theory, "a plaintiff must show: '(1) the training or supervision was inadequate for the tasks performed; (2) the inadequacy was the result of the municipality's deliberate indifference; and (3) the inadequacy was closely related to or actually caused the injury.'" *Howell v. NaphCare, Inc.*, 67 F.4th 302, 319 (6th Cir. 2023) (citing *Ellis ex rel. Pendergrass v. Cleveland Mun. Sch. Dist*., 455 F.3d 690, 700 (6th Cir. 2006)).

To show a municipality's deliberate indifference as to training, a plaintiff must demonstrate either (1) a "pattern of similar constitutional violations by untrained employees" or (2) "a single violation of federal rights, accompanied by a showing that [the municipality] has failed to train its employees to handle recurring situations presenting an obvious potential for a constitutional violation." *Shadrick v. Hopkins Cnty*., 805 F.3d 724, 738–39 (6th Cir. 2015) (internal quotation marks and citations omitted).

Plaintiff has not shown the requisite pattern of unconstitutional conduct that would amount to deliberate indifference on the part of Defendant Loudon County. Plaintiff attempts to establish this element by stating that the Loudon County Jail had experienced an inmate's delivery of a baby prior the incidents in this case [Doc. 48 at 26]. As Defendant Loudon County correctly points out

11

in its reply, however, Plaintiff presents no facts suggesting that the prior delivery in the Loudon County Jail involved any constitutional violation. Thus, this allegation of a single prior birth in the Loudon County Jail is not proof of "pattern[s] of similar constitutional violations by untrained employees." *Connick*, 563 U.S. at 62.

As to the single-violation theory of municipal liability for failure to train, Plaintiff has failed to present any evidence to support an "obvious potential" for constitutional violations on the part of Defendant Loudon County. *Shadrick*, 805 F.3d at 739. While Plaintiff points out that the Loudon County Jail houses women and therefore is on notice that it may house pregnant women, Plaintiff's own expert opines in relevant part that Defendant Loudon County's "medical policy Medical Service Plan, 11.01, is within National Standards, however the Loudon County Detention Center staff, including supervisors, failed to follow this policy. Policies are a guide to which staff must be trained to follow as a plan. While this policy did not specifically address the needs of a pregnant inmate, it could have still been applied to address Ms. Jones' clear medical needs" [Doc. 49-23 at 16].

In other words, even Plaintiff's expert acknowledges that Defendant Loudon County's relevant medical policy is appropriate, and that jail officials could have applied it to properly address Plaintiff's medical needs as a pregnant inmate. As such, this expert testimony would not allow a reasonable jury to find that this proper medical policy creates an obvious potential for constitutional violations. And Plaintiff does not allege or demonstrate how any other policy of Defendant Loudon County creates any obvious potential for constitutional violations.

Moreover, while Plaintiff's expert also opines that Defendant Loudon County did not create a policy regarding pregnant inmates and/or train staff on how to recognize medical emergencies, including those involving pregnant women, Plaintiff does not dispute Defendant

12

Case 3:23-cv-00415-CEA-DCP   Document 59   Filed 10/22/25   Page 12 of 14
PageID #: 1136

Loudon County's evidence that, at all times relevant to this case, its employees involved in this matter had received TCI training [Doc. 36-5 at 22; Doc. 36-6 at 8; Doc. 36-12 at 8; Doc. 36-13 at 8; Doc. 35-15 at 19–20; Doc. 36-18 at 8–9; Doc. 36-43 at 8–9]. While Plaintiff attempts to rely on Defendant Loudon County's lack of specific training as to pregnant inmates to support a cause of action, the record demonstrates that the TCI did not require such training, and nothing in the record suggests that this case involves the type of "limited on-the-job training" that amounted to "no training at all" in *Shadrick*. *See Howell*, 67 F.4th at 320 (discussing *Shadrick* and finding "County did not wholly fail to train" its officers where it relied on initial and on-the-job training and officers "displayed knowledge of and familiarity with the relevant policies"). And Plaintiff's allegation that Defendant Loudon County could or should have provided more or better training regarding pregnant inmates fails to create a genuine issue of material fact regarding this claim. *See City of Canton*, 489 U.S. at 392 ("In virtually every instance where a person has had his or her constitutional rights violated by a city employee, a § 1983 plaintiff will be able to point to something the city 'could have done' to prevent the unfortunate incident. . .").

Accordingly, the record before the Court does not create a genuine dispute of material fact regarding the applicability of a failure-to-train theory of *Monell* liability.

### b. Inaction/Custom of Tolerance or Acquiescence

Plaintiff also claims that Defendant Loudon County had a "custom of tolerance or acquiescence" of constitutional rights violations and that this Defendant's inaction therefore caused a violation of her constitutional rights. However, Plaintiff has not set forth any evidence of prior instances of unconstitutional conduct, much less a clear and persistent pattern of unconstitutional conduct, as required to establish such a claim. *Thomas*, 398 F.3d at 429 (citation omitted). As such, the record does not create a genuine dispute of material fact regarding

Defendant Loudon County's inaction or the applicability of a custom or tolerance theory of municipal liability.

## IV. CONCLUSION

For the reasons set forth above, no genuine disputes of material fact remain as to Plaintiff's *Monell* claims, Defendant Loudon County's Motion for Summary Judgment [Doc. 36] is **GRANTED**, and Plaintiff's Motion in Limine [Doc. 50] is **DENIED as moot**.

**SO ORDERED**.

**AN APPROPRIATE JUDGMENT ORDER WILL ENTER.**

*/s/ Charles E. Atchley, Jr.*
**CHARLES E. ATCHLEY, JR.**
**UNITED STATES DISTRICT JUDGE**